UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LEONARD D. COLLINS,<br>Plaintiff,<br>v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>Defendant. | No. 11-CV-0064-JPH<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment. (Ct. Rec.20, 22.) Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney Mathew W. Pile represents defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** defendant's Motion for Summary Judgment and **DENIES** plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Leonard D. Collins (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on May 9, 2006. (Tr. 118, 123, 139.) Plaintiff alleged an onset date of May 1, 2006. (Tr. 118, 123.) Benefits were denied initially and on reconsideration. (Tr. 85, 94, 97.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Gene Duncan on September 29, 2008. (Tr. 31-77.) Plaintiff was represented by counsel and testified at the hearing. (Tr.31-34, 45-68.) Vocational expert Deborah LaPoint and medical expert Arthur B. Craig, M.D., also testified. (Tr. 35-45, 68-76.) The ALJ denied benefits (Tr. 12-23) and the Appeals Council

denied review. (Tr. 4.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff went to school through the tenth grade and has a GED. (Tr. 32.) He has work experience primarily as a dump truck driver. (Tr. 69.) He has diabetes. (Tr. 65.) He has blurry vision. (Tr. 65.) He testified his hands are numb and sting a lot. (Tr. 47.) He has stinging and numbness in his feet and they are difficult to walk on. (Tr. 47-48.) His ankles give out because they are cracking open. (Tr. 48.) He gets light-headed and has coughing fits. (Tr. 49.) He has arthritis in his fingers. (Tr. 52.) He gets wobbly if he walks too long or if he exerts himself too much. (Tr. 52.) He has acid reflux and back pain. (Tr. 53, 65.) He has memory problems. (Tr. 54.) He has sleep apnea. (Tr. 66.) He was in and out of prison for 20 years. (Tr. 62.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the

claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found plaintiff did not engage in substantial gainful activity since May 1, 2006, the alleged onset date. (Tr. 20.) At step two, the ALJ found plaintiff has the following severe impairments: diabetes, asthmatic bronchitis/reactive airways disease, degenerative joint disease and obesity. (Tr. 20.) At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 23.) The ALJ then determined:

> [T]he claimant has the residual functional capacity for a limited range of light work as defined in 20 CFR 404.1567(c), with limitations for only

> occasional climbing, stooping, kneeling, crouching, and crawling; no climbing of ladders, balancing, unprotected heights or vibrating equipment; and no concentrated exposure/levels of gases, fumes, chemicals, dust, odors, or other airborne pollutants. He can frequently grasp and handle objects but can only occasionally perform fine finger manipulations/dexterity; he should work with objects and not people, with only superficial public contact.

(Tr. 23.) At step four, the ALJ found plaintiff is unable to perform any past relevant work (Tr. 25.) After considering plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 26.) Thus, the ALJ concluded plaintiff has not been under a disability as defined in the Social Security Act from May 1, 2006 through the date of the decision. (Tr. 27.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) did not properly consider or reject plaintiff's testimony about physical limitations; (2) failed to identify a mental impairment at step two; and (3) improperly rejected the opinions of certain medical providers. (ECF No. 21 at 13-22.) Defendant argues the ALJ: (1) properly discounted plaintiff's credibility; (2) properly assessed plaintiff's physical limitations; and (3) properly assessed plaintiff's mental limitations. (ECF No. 23 at 6-20.)

**DISCUSSION**

**1. Credibility**

Plaintiff argues the ALJ did not properly consider or reject his testimony regarding his physical limitations. (ECF No. 21 at 17-18.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom

and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

Plaintiff acknowledges the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent the are inconsistent with the RFC finding. (ECF No. 21 at 18, Tr. 25.) Notwithstanding, plaintiff suggests the ALJ failed to cite clear and convincing reasons justifying the credibility determination. (ECF No. 21 at 18.)

The ALJ was not required to provide clear and convincing reasons supporting the credibility finding because the ALJ cited affirmative evidence of malingering. (Tr. 24-25.) The clear and convincing reasons standard does not apply when there is affirmative evidence that the claimant is malingering. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir.1999); *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ pointed out that Dr. McRae's December 2008 psychological evaluation contained evidence of malingering or exaggerating problems

with memory and general mental ability. (Tr. 24, 589-94.) Dr. McRae observed plaintiff moving very slowly during the Trails Making tests despite being encouraged to work as fast as he could. (Tr. 591.) It was Dr. McRae's judgment that plaintiff's slowness was purposeful and he was not putting forth a full effort. (Tr. 591.) Dr. McRae noted plaintiff's IQ scores were lower than previous testing revealed and concluded plaintiff's low IQ scores are inconsistent with plaintiff's GED, work history and ability to live on his own. (Tr. 591.) With respect to the WRAT-IV, test results suggested second to fourth grade abilities which is inconsistent with plaintiff's GED. (Tr. 592.) Dr. McRae opined this raises questions about whether plaintiff is an accurate historian. (Tr. 592.)

The results of the Test of Memory Malingering (TOMM) were lower than Dr. McRae has seen before and he judged plaintiff was purposely trying to show he had great difficulty with his visual memory. (Tr. 592.) Similarly, the scores on the WMS III were the lowest ever seen by Dr. McRae. (Tr. 593.) As a result, Dr. McRae judged plaintiff did not put full effort into concentrating and remembering. (Tr. 593.) His scores suggest poor effort or intentional behavior for the purpose of trying to appear he has problems with memory. (Tr. 593.) Dr. McRae also observed plaintiff's initial somatic complaints did not persist throughout the testing. (Tr. 593.) He opined, "I believe there are several indicators of malingering or exaggerating the problems with his memory and general mental ability. I do not believe he gave a good effort." (Tr. 593.)

Based on the evidence of malingering, the ALJ was not required to cite additional clear and convincing reasons justifying the credibility finding. However, the ALJ gave several clear and convincing reasons further justifying rejection of plaintiff's testimony. (Tr. 24-25.) First, the ALJ pointed out plaintiff has been chronically non-compliant with treatment. (Tr. 24.) It is well-established that unexplained non-compliance with treatment reflects on a claimant's credibility. *See Molina v. Astrue*, 674 F.3d 1104, 1113 -1114 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996); *Fair v. Bowen*, 885 F.2d 597, 603 -604 (9th Cir. 1989). Dr. Baker, a treating physician, noted in June 2007 that plaintiff admitted not following the diabetic diet, and in July 2007, Dr. Baker reported plaintiff had been historically noncompliant with diet. (Tr. 454-55.) In May 2008, Dr. Margraf reported plaintiff had been taking his medications chaotically, had been checking blood sugars infrequently, and did not follow the

recommended diabetic diet. (Tr. 559.) After reviewing the entire record, the medical expert, Dr. Craig, opined plaintiff appeared to decide what to do rather than following a doctor's advice and there was no mention of altering his diet. (Tr. 36-37.) The evidence supports the ALJ's conclusion that plaintiff was not compliant with recommended treatment for diabetes.[1] This was reasonably considered by the ALJ in assessing plaintiff's credibility.

The ALJ also considered the objective evidence and opinion evidence. (Tr. 24-25.) While subjective pain testimony may not be rejected solely because it is not corroborated by objective medical findings, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). The ALJ pointed out that Dr. Craig opined plaintiff can perform light work and that his complaints were not supported by the treatment record. (Tr. 24, 36-37,43-44.) Dr. Baker refused to fill out plaintiff's disability forms because he did not see any reason for disability as many people with diabetes are able to work. (Tr. 454.) In February 2008, plaintiff saw a new provider who reported plaintiff spent a lot of time discussing that he wants disability and cannot work but was not willing to listen to anything the provider had to say. (Tr. 24, 529.) The provider opined plaintiff was most concerned about getting secondary aid from the visit. (Tr, 529.) Dr. Bozarth, a neurologist, examined plaintiff in December 2008 and the exam was mostly unremarkable. (Tr. 25, 597-603.) Dr. Bozarth noted giveaway weakness and marked impairment of position and vibratory sense, but opined he did not believe they were objective or at least there was a good possibility they were not real. (Tr. 602.) Dr. Bozarth said it is "hard to indicate that he is not able to work." (Tr. 603.) Furthermore, the state consulting physician found plaintiff has the capacity for the full range of medium work. (Tr. 25, 514-18.) The ALJ cited substantial medical evidence conflicting with plaintiff's claims of greater limitations and disability. As a result, the ALJ did not err in concluding the medical evidence undermines plaintiff's credibility.

---

[1]Additional evidence not before the ALJ but considered by the Appeals Council further supports the ALJ's finding that plaintiff was not compliant with medication. During a July 2009 hospitalization for pancreatitis, plaintiff admitted he had been noncompliant with his medication during the previous month, and during a November 2009 hospitalization for a probable pancreatitis attack, plaintiff claimed to have been unaware of any dietary restrictions he should have been following. (Tr. 814, 852.) He told his endocrinologist he had not been testing his blood sugar or taking his insulin. (Tr. 650.) During a February 2010 emergency room visit, plaintiff mentioned he had not been checking his blood sugar. (Tr. 844.)

The ALJ properly considered evidence of malingering, plaintiff's noncompliance with treatment recommendations, and medical evidence conflicting with plaintiff's claimed limitations. The credibility finding is therefore justified by clear and convincing reasons supported by substantial evidence.

**2. Mental Limitations**

Plaintiff suggests the ALJ erred by failing to find a mental impairment at step two of the sequential evaluation (ECF No. 21 at 18-19) and asserts the ALJ erroneously rejected the opinion of Dr. Mabee. (ECF No. 21 at 20-21.) Plaintiff argues he is more limited from a psychological standpoint than the ALJ determined based on the opinions of Dr. Mabee and Dr. McRae. (ECF No. 21 at 19-21.)

At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See e.g. Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549050 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.* As explained in the Commissioner's policy ruling, "medical evidence alone

is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85-28. Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

Plaintiff points out the ALJ included mental limitations in the RFC but did not identify a severe mental impairment at step two. (ECF No. 21 at 18.) The ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe" in assessing the claimant's residual functional capacity. S.S.R. 96-8p. A "not severe" impairment may not on its own significantly limit an individual's ability to do basic work activities, but it may be limiting when considered with limitations or restrictions due to other impairments. *Id.* In addition to physical limitations, the RFC indicates plaintiff should work with objects and not people and should have only superficial contact with the public. (Tr. 23.) The ALJ reasonably included limitations supported by the evidence in the RFC even though the ALJ did not identify a corresponding severe impairment. Furthermore, even if the ALJ erred by failing to identify a mental impairment as severe at step two, the error is harmless because the ALJ continued the sequential evaluation and appropriately considered and included those limitations supported by the record in the RFC. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir.2005).

The mental health evidence includes a psychological evaluation by Dr. Mabee in May 2008[2] and the evaluation in by Dr. McRae in December 2008, discussed *supra*. (Tr. 21-22, 541-46, 589-96.) Dr. Mabee noted that during the evaluation, plaintiff did not appear to be engaged in the testing as reflected by his low scores on all assessments. (Tr. 543.) Plaintiff performed poorly on the Mini Mental Status Exam and the results of the REY 15-item test and the Test of Memory Malingering (TOMM) indicated plaintiff was giving poor effort. (Tr. 543.) Similarly, the results of the WMS-II indicate plaintiff has "extremely low cognitive function; however, the evaluator believed plaintiff did not give his full effort. (Tr. 543.) Dr. Mabee diagnosed undifferentiated somatoform disorder, borderline intellectual functioning, and "rule out" mental retardation. (Tr. 544.) Dr. Mabee concluded plaintiff demonstrates extremely low

---

[2]The May 2008 report was written by Abigail Osborne-Elmer, MS, LMHC, an "assessment specialist." (Tr. 545.) Dr. Mabee also signed the report and indicated it is his professional opinion that the assessment meets appropriate professional standards for this type of examination. (Tr. 545.) Ms. Osborne-Elmer also completed a DSHS psychological/psychiatric form which also appears to be co-signed by Dr. Mabee. (Tr. 537.) For ease of discussion, the report and DSHS form are referenced as Dr. Mabee's work product.

intellectual abilitites and deficits in adaptive functioning. (Tr. 544.) He assessed severe limitations in the ability to complete simple and complex tasks, noting that plaintiff may have the ability to complete simple, repetitive tasks in a low stress, sedentary environment. (Tr. 545.) Dr. Mabee indicated plaintiff's judgment is below average which is reflected by his low cognitive functioning. (Tr. 545.) Pace was assessed to be in the low average range. (Tr. 545.) Dr. Mabee opined plaintiff would likely have severe problems being able to initiate and maintain regular employment. (Tr. 545.)

The ALJ rejected Dr. Mabee's opinion. (Tr. 24-25.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

The first reason mentioned by the ALJ in rejecting Dr. Mabee's opinion is Dr. McRae's later opinion "directly refuted" Dr. Mabee's diagnoses and conclusion that plaintiff would have problems initiating and maintaining employment.[3] (Tr. 24.) It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Commissioner*, 169 F.3d 595, 599-600 (9th Cir. 1999). The ALJ pointed out Dr. McRae reported plaintiff endorsed no mental difficulties and made no psychiatric diagnosis except a provisional diagnosis of borderline intellectual functioning. (Tr. 24, 593.) As noted *supra*, Dr. McRae identified indicators of malingering or exaggerating and reported plaintiff

---

[3]Plaintiff argues the ALJ "stated that Dr. Mabee's evaluation was contrary to other medical source evidence; however, the ALJ does not state which medical source evidence he is referring to." (ECF No. 21 at 20. ) The ALJ specifically referenced Dr. McRae's assessment as refuting Dr. Mabee's evaluation. (Tr. 24-25.)

did not give good effort. (Tr. 24.) The ALJ noted Dr. McRae's opinion that plaintiff is more likely than not able to carry out at least simple, repetitive work tasks with some limited contact with people. (Tr. 24, 593.) The ALJ considered both opinions and reasonably concluded Dr. McRae's opinion is entitled to more weight based on the content of the reports and the entire record. It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ also cited other psychological evidence consistent with Dr. McRae's opinion and supporting the RFC. (Tr. 24-25.) This is a specific, legitimate reason supported by substantial evidence justifying rejection of Dr. Mabee's opinion.

The ALJ also noted Dr. Mabee's report is contrary to plaintiff's own statements and history. (Tr. 25.) The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir. 2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Indeed, notwithstanding Dr. Mabee's findings, plaintiff denied symptoms of depression to Dr. Mabee and denied feeling anxious or depressed to Dr. McRae. (Tr. 544, 589.) Plaintiff testified his mental problems were attributable to "memory loss." (Tr. 24, 54.) Plaintiff also testified he studied for and obtained a GED. (Tr. 24, 32, 55.) Plaintiff drives, shops, manages his own money and worked for a number of years, all suggesting a higher level of ability that functional testing revealed. (Tr. 24, 542-43, 590, 593.) Dr. McRae opined plaintiff's GED, work history and ability to live on his own are inconsistent with his test scores. (Tr. 22, 591.) The ALJ's reasoning is based on substantial evidence in the record the record and constitutes a specific, legitimate reason for rejecting Dr. Mabee's assessment.

Another reason mentioned by the ALJ in rejecting Dr. Mabee's opinion is that Dr. Mabee's examination was a "one-time consultative assessment and DSHS assessments are also known to be lenient, and are for the primary purpose of extending state benefits." (Tr. 25.) Defendant does not rely on this statement (ECF No. 23 at 20 ) and this is not an appropriate reason for rejecting Dr. Mabee's report. An ALJ should not base his opinion of medical evidence on personal experiences or evidence which is not part of the record. *See Reed v. Massanari*, 270 F.3d 838, 843-44 (9th Cir. 2001) (finding it was improper for the ALJ to reject opinions of doctors based on past experience). Furthermore, the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *Lester v.*

*Chater*, 81 F.3d 821, 832 (9th Cir. 1996). Despite citing this inappropriate reason, the ALJ gave other specific, legitimate reasons supported by substantial evidence which support the ALJ's rejection of Dr. Mabee's opinion. *See e.g., Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Therefore, the outcome is the same despite the improper reasoning. Errors that do not affect the ultimate result are harmless. *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990); *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

Based on the foregoing, the ALJ properly rejected Dr. Mabee's opinion. The evidence supports the ALJ's step two finding and the record supports the RFC with respect to mental limitations. As a result, the ALJ did not err.

**3. Evidence Submitted to the Appeals Council**

Plaintiff argues the ALJ erred by failing to properly reject the opinion of Karen Bichler, ARNP. (ECF No. 21 at 21.) However, plaintiff also acknowledges the evidence from Ms. Bichler and Dr. Cathcart was submitted to the Appeals Council and was not before the ALJ. (ECF No. 21 at 22, Tr. 5-6, 613-878.) The Appeals Council found that the new evidence submitted did not provide a basis for changing the ALJ's decision. (Tr. 1-3.) It is established in this circuit that any evidence which was submitted to the Appeals Council is part of the record for review.[4] *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000) (concluding the district court properly considered new evidence submitted to the Appeals Council because the Appeals Council addressed those materials in denying review); *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993) (noting district court reviewed all materials including evidence not before the ALJ when Appeals Council declined to accept review). Thus, this court properly considers the evidence from Ms. Bichler and Dr. Cathcart in reviewing the ALJ's decision.

In April 2009, Ms. Bichler examined plaintiff and assessed plaintiff with asthma/COPD, severe hyperlipidemia, pancreatitis, type II diabetes poorly controlled and hypertension. (Tr. 683.) She opined work-related activities of walking, lifting, handling, carrying and seeing were moderately affected by plaintiff's conditions. (Tr. 683.) She also indicated plaintiff was restricted in the areas of balancing, stooping, bending, climbing, crouching, kneeling, pulling and pushing. (Tr. 683.) Ms. Bichler opined

[4] There is a split among the circuits on this issue. The Ninth Circuit follows majority rule. *See Mills v. Apfel*, 244 F.3d 1, 4 (1st Cir. 2001) (discussing circuit split).

plaintiff's overall work level is severely limited and plaintiff is unable to lift at least two pounds or unable to stand or walk. (Tr. 685.) She indicated that based on plaintiff's lipids, he needed a stress test and "h[e] will end up having Open [sic] heart surgery." (Tr. 685.) She opined plaintiff is unable to work. (Tr. 685.)

Plaintiff argues this opinion "should have been given great weight" because Ms. Bichler was a treating source. (ECF No. 21 at 21.) However, as an ARNP, Ms. Bichler is an "other source" whose opinion is entitled to less weight than that of an "acceptable medical source" such as a treating or examining physician. 20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996). Ms. Bichler's opinion relates to a period after the period covered by the ALJ's decision and does not indicate the assessed limitations relate to the relevant period. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (indicating a statement of disability made outside the relevant time period may be disregarded). Further, Ms. Bichler's opinion that plaintiff would be having open heart surgery was not supported by the result of a later stress test and cardiology workup: the stress test revealed plaintiff was a low risk for future cardiac events (Tr. 623); a lower extremity arterial evaluation was unremarkable (Tr. 624); and no follow-up was recommended after an echocardiogram. (Tr. 626.)

Otherwise, plaintiff saw Ms. Bichler for a blood draw in December 2008 (Tr. 660), for an upper respiratory infection and acute bronchitis (Tr. 675, 679), and for an abscess on his neck. (Tr. 688, 694, 695. ) Plaintiff last saw Ms. Bichler in June 2009 to coordinate appointments with other physicians. (Tr. 702.) Nothing in the evidence from Ms. Bichler suggests the ALJ would have made a different decision had the ALJ reviewed this evidence and most of this evidence relates to a period after the ALJ's decision. As a result, the evidence from Ms. Bichler does not justify remand.

Similarly, plaintiff first saw Dr. Cathcart, an endocrinologist, regarding his diabetes in June 2009, after the date of the ALJ's decision. (Tr. 750-52.) Dr. Cathcart summarized plaintiff's condition as type-II diabetes mellitus complicated by severe peripheral neuropathy. (Tr. 752.) Plaintiff emphasizes that Dr. Cathcart diagnosed "severe" neuropathy (ECF No. 21 at 22), but there is no explanation of that diagnosis and no evidence of a functional connotation to the term "severe." (Tr. 750, 752.) In fact, Dr. Cathcart's treatment for severe neuropathy was simply to give plaintiff a "peripheral neuropathy sheet that I hand out to all patients especially those with severe peripheral neuropathy, so that we can be certain to protect his feet as much as possible." (Tr. 752.) Plaintiff's glucose was adjusted, he was asked to check and

record his blood sugars regularly, and plaintiff's diet was reviewed. (Tr. 752.) This does not suggest Dr. Cathcart attributed any specific significance or limitations to the "severe" neuropathy diagnosis.

Dr. Cathcart also saw plaintiff in November 2009 after he had been hospitalized for pancreatitis secondary to hypertriglyceridemia. (Tr. 650.) Plaintiff admitted he had not been testing his blood sugars or taking his insulin, thus he developed hypertriglyceridemia. (Tr. 650.) Dr. Cathcart changed the insulin prescription and asked plaintiff to test twice a day. (Tr. 650.) He told plaintiff he needed to help try to improve his own situation. (Tr. 650.) Plaintiff does not point to any specific evidence in Dr. Cathcart's records other than the diagnosis of severe neuropathy, and nothing in the Dr. Cathcart evidence reflects or suggests additional limitations not already accounted for in the RFC.

Nothing in the new evidence submitted to the Appeals Council suggests the ALJ may have decided differently had these records been available. Much of the evidence was developed after the date of the decision and does not relate to plaintiff's condition during the period covered by the ALJ's decision. As a result, remand is not justified on the basis of Dr. Cathcart's records or the evidence from Ms. Bichler.

**4. Physical Limitations**

Plaintiff argues generally he "believes he is more limited from a physical standpoint than what was determined by the ALJ." (ECF No. 21 at 14, 15, 16.) Plaintiff cites generally to medical evidence in the record but does not assert any errors in the ALJ's interpretation of the evidence relating to plaintiff's physical limitations. (ECF No. 21 at 14-16.) The ALJ's findings regarding physical limitations are supported by substantial evidence, in particular by the opinions of Dr. Bozarth, Dr. Baker, Dr. Craig and other evidence discussed *supra.* (Tr. 20-25.) The court declines to further address this issue which was not argued with specificity. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and is not based on error.

Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(ECF No. 22)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(ECF No. 20)** is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for defendant and the file shall be **CLOSED**.

DATED June 20, 2012

S/ JAMES P. HUTTON
UNITED STATES MAGISTRATE JUDGE